Goetz Fitzpatrick LLP
One Penn Plaza
31st Floor
New York, New York 10119
Telephone: 212-695-8100
Gary M. Kushner, Esq.
Scott D. Simon, Esq.

***Proposed Attorneys for Debtor***

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                    :        Chapter 11
                                                          :
CANAL ASPHALT, INC.,                                      :        Case No. 7:15-bk-23094 (RDD)
                                                          :
                               Debtor.                    :
------------------------------------------------------------X

**DECLARATION OF AUGUST NIGRO III**
**<u>PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2</u>**

I, August Nigro III, make this declaration under 28 U.S.C. § 1746:

1.      I am the President of Canal Asphalt, Inc. ("Canal" or "Debtor"). I have served in this capacity since January, 1992.

2.      On July 31, 2015 (the "Commencement Date"), Canal commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[1]

3.      I am knowledgeable and familiar with the business and financial affairs of the Debtor. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, or my opinion based upon experience, knowledge, and information concerning the operations of the Debtor as an asphalt manufacturer and in the construction industry. If called upon to testify, I would testify competently to the facts set forth

---

[1] Based on information and belief, venue for the Debtor's chapter 11 case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, as Canal has been domiciled in this district for at least one hundred and eighty days prior to the Commencement Date.

in this Declaration.

4.      This Declaration is submitted pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") for the purpose of apprising the Court and other parties in interest of the circumstances that compelled the commencement of this chapter 11 case and in support of (i) the Debtor's chapter 11 petition and (ii) the motions and applications that the Debtor has filed with the Court, including, but not limited to, the "first-day motions" (the "First-Day Pleadings"). I am authorized to submit this Declaration on behalf of the Debtor.

## I.

## Preliminary Statement

5.      The Debtor has resorted to chapter 11 protection in order to ensure that its valuable assets can be sold in an orderly fashion and to allow the Debtor to complete the remainder of its construction projects, collect accounts receivable and prosecute claims for the collection of other funds due to its estate. The Debtor intends to pay the proceeds generated from the liquidation of its assets to its creditors under a chapter 11 plan of liquidation in accordance with the priority scheme provided under the Bankruptcy Code.

6.      The Debtor's liquidating plan is primarily based on the sale of its asphalt plant to Thalle Industries, Inc. ("Thalle"). The sale of the asphalt plant to Thalle will be made, subject to Bankruptcy Court approval, pursuant to the terms and conditions of a purchase and sale agreement dated July 27, 2015 (the "PSA").[2]

7.      The material terms of the PSA include the following:

- a sale price of $12,800,000 for the Canal Property (as defined) and certain specifically earmarked pieces of equipment and machinery necessary to operate the asphalt plant;

---

[2] Pursuant to the PSA, Thalle has the right to assign the contract to one or more entities which it intends to form for the purpose of acquiring title to the Canal Property and other assets to be conveyed under the PSA.

- the assignment of the Debtor's valuable operating permits to Thalle, which will enable Thalle to operate the asphalt plant; and

- a consulting agreement (the "Consulting Agreement") between Thalle and Agency Consulting, LLC ("Agency"), a closely-held limited liability company of which I am the sole member, for a term of 10 (ten) years from the closing of the sale, during which time I will be restricted from the ownership and construction of an asphalt plant in Westchester County and Bronx County.[3]

8.      In order to complete the sale to Thalle, Canal's affiliate, Gaia Development, LLC ("Gaia"), has agreed to sell its property located at 687 South Columbus Avenue, Mt. Vernon, New York (the "Gaia Property"), which is critical to the efficient operation of the asphalt plant. Without the inclusion of the Gaia Property, the Debtor could not generate maximum value for the sale of the asphalt plant.[4]

9.      In consideration for the execution and delivery of the PSA by Thalle, the Debtor has expressly agreed that the proposed sale shall not be conducted subject to higher and/or better offers. By way of motion filed herewith, the Debtor will be requesting that the Bankruptcy Court consider and approve the sale of the Canal Property without the requirement of implementing bidding procedures.

10.      The Debtor's request in this regard is premised on the fact that it has extensively shopped the sale of the asphalt plant for approximately six (6) months prior to the chapter 11 filing.

11.      The Debtor was specifically engaged in negotiations with various entities in order to obtain competing offers. These entities included Peckham Industries, Inc. ("Peckham"), Petro Management LLC, Cofire Paving, Scalamandre and Sons, and others, all of which are capable of operating an asphalt plant and, upon information and belief, are financially qualified to make the

---

[3] The Consulting Agreement requires the payment of $2,500,000 to Agency over a six (6) year term, and will be guaranteed by Thalle.

[4] I am also the sole member of Gaia.

3

acquisition.[5]

12.     Having already marketed the sale of the asphalt plant for a considerable period of time prior to the Commencement Date, and having already conducted extensive negotiations with a number of potential suitors, the Debtor believes that the purchase price for the asphalt plant to be paid by Thalle under the PSA is the highest and best offer.

13.     Moreover, Canal reasonably anticipates that the sale of the asphalt plant to Thalle pursuant to the PSA, together with the completion of existing construction projects, the collection of existing and future accounts receivables and the successful prosecution of claims, will result in the generation of sufficient proceeds such that all creditors will be substantially paid on their respective allowed claims – if not paid in full.

## II.

## The Debtor's Business

### A. Historical Background

14.     Canal was a family-owned business started by my father and uncle. My father transferred his 50% ownership interest in Canal to me in the early 1990's. In 1992, I also reached an agreement to purchase my uncle's 50% ownership interest in Canal over a 10 year payout period that has been completed. I am now the sole shareholder of Canal.

15.     Canal is the owner/operator of an asphalt plant with corporate offices located at 800 Canal Street, Mt. Vernon, New York (the "Canal Property"). Canal historically manufactured and sold asphalt to various customers at a per ton pricing structure. Canal's typical asphalt customers included milling and paving contractors.

16.     Canal also performed work on construction projects, primarily as a subcontractor, on various public works and private projects situated in the metropolitan New York area. The

---

[5] Peckham is the largest asphalt manufacturer in Westchester County. Approximately 8 years ago, Peckham and the Debtor were involved in extensive discussions involving the purchase of Canal's asphalt plant.

construction work that Canal performed typically involved the installation, repair, milling and repaving of roads where the primary paving material is asphalt.

17.    Canal has several affiliates that also engage in construction projects, including Core Construction of NY LLC ("Core Construction") and Core Contracting of NY LLC ("Core Contracting"). Core Construction and Core Contracting typically purchase asphalt from Canal. Canal often rents hard equipment that is owned by its affiliates.

**B. Canal's Financial Problems**

18.    Asphalt sales have suffered over the past four or five years for several primary reasons. First, construction projects requiring the use of asphalt have been on the decline for many years, in large part due to budgeting constraints of local municipalities. Second, Canal's asphalt sales have declined as a result of local competition from other local plant owners such as Peckham, which has a larger operation and can often provide more competitive pricing to the marketplace. As a result of marketplace competition, Canal is often forced to sell its asphalt at lower prices and with lower margins. Shrinking margins have made it extremely difficult to generate sufficient cash flow to service the Debtor's extremely high debt structure.

19.    Canal's construction work has also recently suffered as a result of the decline in its asphalt plant operations. In many instances, the ability of Canal to make competitive bids for construction projects often depends on the cost of asphalt manufactured at its own plant. Canal was placed on "COD" status with many of its trade vendors prior to the chapter 11 filing. The debt structure and difficulty with trade creditors have made it virtually impossible for Canal to successfully bid for construction projects.

20.    In addition, Canal's cash flow has recently worsened on account of the failure of a general contractor to pay approximately $1,800,000 that is due on various projects. Canal has been forced to commence litigation on that claim against that general contractor, Petrillo

5

Contracting ("Petrillo").

21.    Prior to commencing litigation against Petrillo, the parties engaged in negotiations towards a resolution. At one point, the parties had agreed in principal to a payout from Petrillo, but the agreement was never finalized. Instead, litigation ensued and the receivable remains in dispute and uncollected.

22.    As a result of the unpaid receivable due from Petrillo, Canal lacked sufficient cash flow to operate the asphalt plant for the 2015 season. Asphalt plants in this region, such as Canal's, typically close during the winter months because asphalt cannot be manufactured in cold weather. Canal shuts down in late November or December each year and reopens in late March or early April. Since Canal's trade credit was non-existent and other financing was unavailable, Canal did not have the necessary funds to acquire raw materials such as stone and oil. Consequently, the asphalt operations at Canal have been dormant since November 2014.

23.    Due to Canal's cash flow crunch, it has been unable to keep current with various collective bargaining agreements. In turn, these defaults have spurned numerous lawsuits. Some of these lawsuits have now resulted in judgments against Canal, and post-judgment collection activity has ensued. Others are in active litigation and have caused Canal to spend significant funds defending these actions – further reducing Canal's cash flow.

24.    Most critically, Canal's secured debt structure is enormous. Canal has several equipment loans, working capital loans and mortgage loans that enabled the company to grow and operate. Given that Canal is highly over-leveraged and in light of the general decline in sales, Canal has now defaulted on many of these loans, as set forth in greater detail below.

### III.

### Debt Structure

25.    The Debtor has several outstanding loans and agreements that are secured by

6

mortgages on the Canal Property or secured by various pieces of equipment and machinery which are owned by Canal. These secured creditors primarily include Signature Bank ("Signature"), C.L. Consulting & Management, Inc. ("C.L."), New Flow, LLC ("New Flow") and Putnam County Savings Bank ("Putnam").

**A.  Loans with Signature Bank**

26.    Before Canal and Signature engaged in several mortgage loan transactions, a first mortgage against the Canal Property had been originally pledged to Putnam on or about November 21, 2003.

27.    On April 28, 2006, Canal executed and delivered two (2) mortgages to Signature which were recorded as second and third mortgages against the Canal Property.

28.    In June, 2008, Canal entered into a transaction with Signature for the refinancing of the existing second and third mortgages with Signature.

29.    In connection with the refinancing of the Canal Property in June 2008, Canal executed and delivered the following documents to Signature (collectively, the "Signature Loan Documents"):

a.    Amended, Restated and Consolidated Mortgage Note, dated as of June 30, 2008, in the principal amount of $4,000,000 (the notes, as consolidated thereby, are collectively referred to as the "Second Mortgage Loan Note");

b.    Modification and Consolidation Agreement, dated as of June 30, 2008, in the principal amount of $4,000,000, by and between Canal, as mortgagor, and Signature, as mortgagee (the mortgages encumbering the fee simple interest of Canal in the Canal Property, as consolidated thereby, are collectively referred to as the "Second Mortgage");[6]

---

[6] On June 30, 2008, Canal executed and delivered a mortgage to Signature to secure a loan in the principal amount of $37,917.31. The Modification and Consolidation Agreement dated as of June 30, 2008 between Canal and

7

c.      Amended, Restated and Consolidated Mortgage Note, dated as of June 30, 2008, in the principal amount of $2,000,000 (the notes, as consolidated thereby, are collectively referred to as the "Third Mortgage Loan Note");

d.      Mortgage and Security Agreement, dated as of June 30, 2008, in the principal amount of $2,000,000, by Canal, as mortgagor, and delivered to Signature, as mortgagee, encumbering the fee simple estate and interest of Canal in the Canal Property (the "Third Mortgage");

e.      Mortgage Note, dated as of June 30, 2008, in the principal amount of $250,000 (the "Fifth Mortgage Loan Note"; and together with the Second Mortgage Loan Note and the Third Mortgage Loan Note are collectively referred to as the "Signature Mortgage Notes");

f.      Mortgage and Security Agreement, dated as of June 30, 2008, in the principal amount of $250,000, executed by Canal, as mortgagor, and delivered to Signature, as mortgagee, encumbering the fee simple estate and interest of Canal in the Canal Property (the "Fifth Mortgage" and together with the Second Mortgage and the Third Mortgage are collectively referred to as the "Signature Mortgages"); and

g.      Joint and several Guaranty of All Liability dated as of June 30, 2008 (the Guaranty") by myself and Columbus Construction Corporation ("Columbus", and together, the "Guarantors") in favor of Signature.

30.      Signature also provided the Debtor with a loan secured by a fourth mortgage against the Canal Property, which was satisfied in June 2012. Consequently, Signature presently holds mortgages that are characterized as "Second", "Third" and "Fifth" priority in nature, but

---

Signature consolidated the two (2) existing mortgages pledged by the Debtor to Signature on April 28, 2006 and the third mortgage loan dated June 30, 2008 in the principal amount of $37,917.31 into a single lien of $4,000,000.

actually sit as "First", "Second" and "Third" priority mortgages against the Canal Property.

31.     The Second Mortgage Loan and the Third Mortgage Loan are each payable in one hundred twenty (120) monthly payments of principal and interest, with a balloon payment at maturity. The monthly payments to Signature are as follows:

> (i)     Second Mortgage Loan of $25,988.00; and
> (ii)    Third Mortgage Loan of $12,993.50.

32.     The Fifth Mortgage Note in the amount of $250,000.00 will only be payable in the event of any default. No principal or interest on the Fifth Mortgage Loan shall be due or payable in the event the Second Mortgage Loan and Third Mortgage Loan are each paid in full on or prior to the scheduled maturity date of such loans, and no event of default shall have occurred and be continuing immediately prior to such payment in full.

33.     To further secure the Signature Mortgages, Canal executed and delivered a security agreement and an assignment of leases and rents to Signature, which was duly recorded on July 23, 2008. Canal and its affiliates are the only occupants of the Canal Property, which does not otherwise generate any rental income.

34.     By letter dated June 18, 2015, Signature declared a default of the Signature Mortgages, accelerated the balance due on each of the Signature loans and declared its intention to charge the Debtor at the default rate of interest.

35.     Signature has alleged that the balance due on the Second Mortgage Loan Note as of June 18, 2015 is as follows:

| | |
|---|---|
| Principal: | $3,439,246.87 |
| Accrued Interest | $    95,439.10 ($1,050.88 per diem thereafter) |
| Total | $3,534,685.97 |

36.     Signature has alleged that the balance due on the Third Mortgage Loan as of June 18, 2015 is as follows:

| | |
|---|---|
| Principal: | $1,750,913.32 |

9

| Accrued Interest | $   47,720.92 ($525.46 per diem thereafter) |
| Total | $1,798,634.24 |

37.     Signature has alleged that the balance due on the Fifth Mortgage Loan Note as of June 18, 2015 is as follows:

| Principal: | $250,000.00 |
| Accrued Interest | $104,541.67 ($41.67 per diem thereafter) |
| Total | $354,541.67 |

38.     The Debtor believes that the Signature Mortgages are properly recorded and constitute priority liens against the Canal Property.

39.     The Debtor intends to file a plan of liquidation which utilizes the proceeds of the sale of the Canal Property to Thalle under the PSA to satisfy the allowed claims of Signature.

40.     The Signature Mortgages are guaranteed by me and Columbus Contracting, Inc, a former affiliate of the Debtor that is defunct.

**B.  The C.L. Mortgage**

41.     C.L. was one of the largest trade creditors of the Debtor, having supplied oil and other products which are needed to manufacture asphalt. In late 2012, the Debtor's ability to timely pay C.L. for goods sold and delivered was severely impaired because of the Debtor's cash flow shortage. C.L. discontinued deliveries and the parties were unable to reach an amicable resolution of their trade dispute.

42.     By summons and verified complaint dated March 5, 2013, C.L. commenced an action against Canal in the Supreme Court of the State of New York, County of Westchester bearing Index No. 52950/2013 (the "C.L. Action") seeking entry of an order and money judgment on account of asphalt materials and related products which were sold and delivered by C.L. to Canal. In the C.L. Action, C.L. asserted that the debt owed by Canal exceeded $2,200,000.00.

43.     Canal timely answered the complaint on May 6, 2013, denying certain allegations

and asserting various affirmative defenses and counterclaims against C.L. The Debtor primarily

contended in its answer that it had been overcharged by C.L.

44.    During the pendency of the C.L. Action, Canal and C.L. engaged in settlement

negotiations, which were memorialized in a settlement agreement dated as of February 28, 2014

(the "C.L. Settlement Agreement").

45.    Pursuant to the C.L. Settlement Agreement, Canal agreed to pay, and C.L. agreed

to accept, the sum of One Million Eight Hundred Thousand Dollars ($1,800,000) in full and final

settlement of the C.L. Action, payable as follows (the "C.L. Settlement Payment"):

a.    the sum of $300,000 to be made upon the State Court's approval of the
C.L. Settlement Agreement (the "C.L. Down Payment"); and

b.    the execution and delivery of an interest bearing note (the "C.L. Note")
with recourse solely against Canal and Core Contracting of New York,
Inc. ("Core Contracting"), an affiliate of the Debtor, in the principal
amount of $1,500,000.00 which was to be repaid with interest at eight
(8%) percent per annum with: (i) a payment of $200,000 due thirty (30)
days after the Settlement Date (the "C.L. Initial Payment"); and (ii)
monthly payments in the amount of $26,359.31 each for a period of sixty
(60) consecutive months commencing on the first day of the second month
following the C.L. Initial Payment.

46.    Repayment of the C.L. Note was collateralized by:

a.    a collateral mortgage on the Canal Property which was subordinate only to
the Signature Mortgages (the "C.L. Collateral Mortgage");

b.    a junior lien and security interest on the personal property of Canal and
Core Contracting which was subordinate to all existing pledges, including
pledges to Putnam and Signature; and

c.    confessions of judgment executed and delivered by Canal and Core and
delivered to C.L. at a closing.

47.    The Debtor timely made the C.L. Down Payment, the C.L. Initial Payment and

each of the installment payments due through March, 2015. The Debtor has not made the

monthly installments on the C.L. Note for April, May, June or July, 2015.

48.    The principal balance due on the Debtor's books and records for the repayment of

the C.L. Note is $1,098,762.10 as of July 1, 2015. There is now past due interest owed as well.

49.    Under the Debtor's plan, the C.L. Mortgage will be satisfied, in full, from the proceeds of the sale of the Canal Property to Thalle.

50.    There are no guarantees associated with the C.L. Mortgage.

**C. The New Flow Mortgage**

51.    New Flow is an entity that is owned and controlled by my children. In early 2013, Canal was experiencing significant cash flow problems. New Flow was approached by Canal for a short-term loan to provide funds for working capital.

52.    New Flow lent Canal the principal amount of $500,000 on or about February 28, 2013 pursuant to the terms and conditions of a mortgage note of even date (the "New Flow Mortgage Note").

53.    Pursuant to the New Flow Mortgage Note, Canal agreed to fully repay the loan by March 1, 2015 at an interest rate of 6.00% per annum in 24 equal monthly installments of $2,500.00 each and a final balloon payment of the principal balance, and the remaining interest, late charges and expenses.

54.    As security for the repayment of the New Flow Mortgage Note, Canal pledged a mortgage on the Canal Property (the " New Flow Mortgage"). The New Flow Mortgage was originally behind the Signature Mortgages. However, in order to finalize the Debtor's agreement with C.L., New Flow agreed to subordinate the New Flow Mortgage in favor of the C.L. Mortgage.  The NF Mortgage is subordinate to the Signature Mortgages and the C.L. Mortgage.

55.    Canal has failed to make a single interest payment to New Flow as required under the NF Mortgage Note. At present, this is approximately $540,000 due on the New Flow Mortgage inclusive of principal and interest.

56.    The proceeds of the sale of the Canal Property will be utilized to satisfy the New

Flow Mortgage.

57.    There are no guarantees associated with the New Flow Mortgage.

**D. Equipment Loans with Putnam**

58.    Canal obtained several loans from Putnam commencing in 2010. The proceeds of these loans were utilized by Canal to acquire certain equipment and parts to operate the asphalt plant (collectively the "Putnam Loans").

59.    The following is a summary of the Putnam Loans:

a.    a loan dated April 29, 2010 with a maturity date of April 28, 2015, identified as loan number 4000065450. This loan had an original principal balance of $41,738.00 and was repayable in 60 monthly installments of $826.53 each, inclusive of interest at the rate of 7.00% per annum. As of July 1, 2015, the principal balance due on this loan was $1,633.95. The proceeds of the loan were utilized by Canal to purchase an "In-line Warm Mix System, Serial #126." Putnam has a duly perfected security interest against the foregoing equipment. This loan is guaranteed by myself and Core Contracting of NY LLC ("Core Contracting"), an affiliate of Canal.

b.    a loan dated November 19, 2010 with a maturity date of November 19, 2015, identified as loan number 4000065690. This loan had an original principal balance of $13,000.00 and was repayable in 60 monthly installments of $260.46 each, inclusive of interest at the rate of 7.50% per annum. As of July 1, 2015, the principal balance due on this loan was $2,276.71. The proceeds of this loan were utilized by Canal to purchase an air compressor outfit. Putnam has a duly perfected security interest against the foregoing equipment. The loan is guaranteed by myself and Core Contracting.

c.    a loan dated January 24, 2012 with a maturity date of January 24, 2017 identified as loan number 4000065970. This loan had an original principal balance of $38,076.50

13

and was repayable in monthly installments of $753.85 each, inclusive of interest at the rate of 7.00% per annum. As of July 1, 2015, the principal balance due on this loan was $16,189.34. The proceeds of this loan were utilized by Canal to purchase miscellaneous parts to operate the asphalt plant. Canal executed and delivered to Putnam a security agreement covering the collateral acquired from the proceeds of this loan. This loan is guaranteed by myself and Core Contracting.

       d.    a loan dated January 24, 2012 with a maturity date of January 24, 2017, identified as loan number 4000065980. This loan had an original principal balance of $49,360.72 and was repayable in 60 monthly installments of $977.25 each, inclusive of interest at the rate of 7.00% per annum. As of July 1, 2015, the principal balance due on this loan was $19,936.10. The proceeds of this loan were utilized by Canal to purchase miscellaneous parts to operate the asphalt plant. Canal executed and delivered to Putnam a security agreement covering the collateral acquired from the proceeds of this loan. This loan is guaranteed by myself and Core Contracting.

       e.    a loan dated August 7, 2012 with a maturity date of August 7, 2017, identified as loan number 4000066060. This loan had an original principal balance of $9,057.00 and was repayable in 60 monthly installments of $175.10 each, inclusive of interest at the rate of 6.00% per annum. As of July 1, 2015, the principal balance due on this loan was $4,700.90. The proceeds of this loan were utilized by Canal to purchase a furnace for the operation of the asphalt plant. Putnam has a duly perfected security interest against the foregoing equipment. This loan is guaranteed by myself and Core Contracting.

       f.    a loan dated January 25, 2013 with a maturity date of January 25, 2018, identified as loan number 4000066170. This loan had an original principal balance of $88,913.84 and was repayable in 60 monthly installments of $1,718.73 each, inclusive of interest at the rate

of 6.00% per annum. As of July 1, 2015, the principal balance due on this loan was $55,100.71.
The proceeds of this loan were utilized by Canal to purchase dozens of parts to update the
asphalt plant. Putnam has a duly perfected security interest against the foregoing parts. This loan
is guaranteed by myself and Core Contracting.

60.    By letter dated July 17, 2015, Putnam declared a default on each of the Putnam
Loans. In its default letter, Putnam alleges that the Debtor is in arrears as of July 17, 2015 in the
collective amount of $103,022.92, with a continuing accrual of $17.23 per diem.

61.    The Debtor acknowledges that it is in default of the Putnam Loans but is still
assessing the amount which is now due.

62.    The Putnam Equipment Loans are personally guaranteed by me and by Core
Contracting.

**E. Retail Installment Contracts**

63.    Canal entered into two (2) retail installment agreements prior to the
Commencement Date.

64.    The first agreement is with Ford Motor Credit, which financed Canal's purchase
of a used 2013 Ford Truck, Model F-150, Vehicle Identification Number ending in "28377" (the
"Ford Contract").

65.    Pursuant to the Ford Contract, Canal agreed to make 60 monthly payments of
$669.98 each, commencing on July 31, 2014 and ending on June 30, 2019. As of July 1, 2015,
the balance on the Ford Contract totals $27,220.43.

66.    The Debtor has not made a payment on the Ford Contract since March 2015.

67.    The second contract is with Komatsu Financial ("Komatsu"), which refinanced
Canal's prior loan for the purchase of two pieces of equipment identified as WA480-6 S/N
A48033 and PC240LC-10 S/N A20025, respectively.

68.    In connection with this contract, the Debtor executed and delivered to Komatsu a commercial refinance and consolidation agreement dated May 10, 2013 (the "Komatsu Agreement").

69.    Pursuant to the Komatsu Agreement, Canal agreed to make 35 monthly payments of $8,611.60 each, commencing on June 13, 2013 and ending on April 13, 2016. As of July 1, 2015, the balance on the Komatsu Agreement totals $129,289.00.

70.    Canal has not made a payment under the Komatsu Agreement since March, 2015.

71.    On July 6, 2015, Komatsu issued a default letter to the Debtor.

**F.  Labor Related Obligations**

72.    Canal has several collective bargaining agreements with the following unions and benefit funds:

- Local 14 Operating Engineers
- Local 15 Operation Engineers
- Local 17 Laborers
- Local 60 Laborers
- Local 137 Operating Engineers
- Local 175 Paving Laborers
- Local 456 Teamsters
- Local 731 Laborers.

73.    Canal is delinquent on most of its obligations under the labor contracts.

74.    Prior to the Commencement Date, Canal was a defendant in several litigations commenced by a labor union and/or benefit fund including the following:

| | | |
|---|---|---|
| Trustees of the Teamsters Local 456; Pension, Health & Welfare, Annuity, Education & Training, S.U.B., Industry Advancement and Legal Service Funds and the Westchester Teamsters Local 456 v. Canal Asphalt, Inc. Supreme Court, Westchester Cty. Index Number: 56418/2015 | Breach of contract | Disposed |
| Trustees of Westchester/Putnam Counties Laborers' Local No. 60 Heavy & Highway Benefit Funds; | Breach of contract | Pending |

| | | |
|---|---|---|
| Welfare, Pension, Annuity, Education & Training, Legal Services, Industry Advancement and Political Action Funds and the Laborers' International Union of North America Local No. 60 v. Canal Asphalt, Inc. U.S. District Court, S.D.N.Y. Case no. 7:13-cv-03620-VB | | |
| Trustees of Operating Engineers Local 137, 137A, 137B, 137C & 137R Annuity, Pension, Welfare and Apprenticeship Skill Improvement and Safety Funds of the International Union of Operating Engineers Local 137, 137A, 137B, 137C & 137R v. Canal Asphalt, Inc. U.S. District Court, S.D.N.Y. Case no. 7:15-cv-02086-KMK | Breach of contract | Pending |
| Pavers & Road Builders District Council Welfare Fund et al v. Core Contracting of NY, LLC, et al. U.S. District Court, S.D.N.Y. Case No. 1:15-cv-00207-BMC | Breach of contract | Pending |
| Highway, Road and Street Construction Laborers Local 1010 v. Canal Asphalt, Inc. AAA Arbitration Case 01-14-0002-1457 | Union arbitration | Pending |
| The Annuity, Pension, Welfare and Training Funds of the International Union of Operating Engineers Local 14-00014B, AFL-CIO, by their Trustees, et al. v. Canal Asphalt Inc. U.S. District Court, S.D.N.Y. Case No. 7:15-cv-03873-RA | Breach of Contract | Pending |

75.    In many of the foregoing litigations, Canal has successfully negotiated settlements with the union/benefit fund in which Canal has agreed to the amount of the allowed claim in the form of confessions of judgment or consent judgments. In return for Canal's agreement, the union/benefit fund has agreed to forebear from enforcing their judgment(s).

76.    Canal believes that the total amount outstanding in respect of union benefit claims is no more than $421,757.65, although many of these claims are subject to dispute.

## G. Unsecured Liabilities

### (a)    Canal's Guaranty of Affiliate Loans

77.    Canal executed and delivered to Putnam a continuing guaranty on the obligations of its affiliate, Core Construction, for the following loan transactions (collectively the "Core Loans"):

a.    loan dated April 2008 in the principal amount of $358,143.37 which was to be repaid in 84 monthly installments of $5,537.60 each inclusive of interest at the rate of 7.75% per annum ("Core Loan #1"). The balance due on Core Loan #1 as of July 1, 2015 is $5,501.62.

b.    loan dated July 21, 2008 in the principal amount of $371,777.00 which was to be repaid in 84 monthly installments of $5,748.40 each inclusive of interest at the rate of 7.75% per annum ("Core Loan #2"). The balance due on Core Loan #2 as of July 1, 2015 is $22,626.95.

c.    loan dated July 1, 2009 in the principal amount of $113,000.00 which was to be repaid in 84 monthly installments of $1,719.32 each inclusive of interest at the rate of 7.25% per annum ("Core Loan #3"). The balance due on Core Loan #3 as of July 1, 2015 is $26,145.77.

d.    loan dated July 1, 2009 in the principal amount of $111,536.19 which was to be repaid in 84 monthly installments of $1,697.04 each inclusive of interest at the rate of 7.25% per annum ("Core Loan #4"). The balance due on Core Loan #4 as of July 1, 2015 is $25,807.70.

e.    loan dated May 6, 2010 in the principal amount of $63,600.00 which was to be repaid in 60 monthly installments of $1,259.33 each inclusive of interest at the rate of 7.00% per annum ("Core Loan # 5"). The balance due on Core Loan # 5 as of July 1, 2015 is $2,498.67.

f.    loan dated May 25, 2010 in the principal amount of $2,000,000 which was to be repaid interest only at the initial rate of 5.00% per annum, subject to change from time to time based upon changes to Putnam's prime rate index ("Core Loan #6"). The original maturity date of Core Loan #6 was July 1, 2011. Putnam extended the maturity date of Core Loan #6 through April 1, 2015. The amount due on Core Loan #6 is $1,957,263.59.

g.    loan dated July 16, 2010 in the principal amount of $87,349.88 which was to be repaid in 60 monthly installments of $1,729.87 each inclusive of interest at the rate of 7.00% per annum ("Core Loan #7"). The balance due on Core Loan #7 as of July 1, 2015 is $6,868.95.

h.    loan dated November 10, 2011 in the principal amount of $366,962.09

18

which was to be repaid in 84 monthly installments of $5,627.85 each inclusive of interest at the rate of 7.50% per annum ("Core Loan #8"). The balance due on Core Loan #8 as of July 1, 2015 is $216,078.57.

i.     loan dated August 6, 2012 in the principal amount of $16,245.41 which was to be repaid in 60 monthly installments of $314.08 each inclusive of interest at the rate of 6.00% per annum ("Core Loan #9). The balance due on Core Loan #9 as of July 1, 2015 is $8,463.16.

j.     loan dated November 10, 2011 in the principal amount of $1,000,000.00 which was to be repaid in 47 monthly installments of $20,853.33 each inclusive of interest at the initial rate of 5% per annum and a final payment of $20,921.96 ("Core Loan # 10"). Core Loan # 10 had a variable interest rate component which adjusted upon change in Putnam's prime rate index. The balanced due on Core Loan #10 as of July 1, 2015 is $916,532.55.[7]

78.     Core Construction has recently been defaulted on its remaining construction projects and is not operating. Core Contracting, which owns the equipment and machinery, intends to liquidate its assets in an orderly manner. These assets consist of machinery and equipment which are subject to the valid liens of Putnam. It is believed that the fair market liquidation value of Core Contracting's equipment and machinery is approximately $1,000,000. Assuming this to be the case, Canal has potential liability on its guaranty of the Core Loans of approximately $1,900,000.

**(b)     Canal's Trade Debt**

79.     Canal estimates that its unsecured trade debt totals $5.2 million (exclusive of claims due to its affiliates and of seriously-disputed claims in litigation).

80.     Several of these debts are disputed and presently in litigation, including the debt of Eastern Concrete, which has filed an action against Canal in the Supreme Court of the State of New York, for collection of approximately $770,000.00.

**(c)     Canal's Liability for Bond Claims**

81.     In the construction industry, it is often required that a contractor obtain a

---

[7] I am also a guarantor of the Core Loans.

performance or payment bond from a surety in order to secure a bid or a project.

82.    In connection with its bonded projects, Canal has potential liability for certain debts of Core Construction in connection with bonds issued by Allied World Assurance Company ("Allied").

83.    Upon information and belief, a bond claim has been filed with Allied in connection with Core Construction's paving contract with the Town of Greenburgh. The Debtor is an alleged indemnitor on this bond claim.

84.    Each of Core Construction, Canal and, upon information and belief, the surety vigorously dispute the validity of the bond claim made by the Town of Greenburgh.

85.    The exact amount of this claim is presently unknown, but could be as high as $1,500,000. The bond claim has been, or will be denied by the surety. Canal disclaims any liability on this claim.

86.    Allied has also received two claims totaling approximately $122,000.00 from Petrillo on a bond issued directly to Canal. Allied World has denied coverage on the Petrillo claim. Petrillo is presently in litigation with the Debtor (and others) on this issue. The Debtor disputes any liability to Petrillo.

**(d)    GAIA Development LLC  ("Gaia")**

87.    Gaia is a domestic limited liability company. I am the sole member of Gaia.

88.    Gaia has a single asset – the real property located at 687 Columbus Avenue South, Mt. Vernon, New York 10050 (the "Gaia Property"). Gaia acquired the Gaia Property on or about February 6, 2001.

89.    The Gaia Property is contiguous with the Canal Property and is integral to the effective operation of the asphalt plant operated by Canal.The Gaia Property originally contained a two-story office building which was demolished in 2012 to enable better egress and ingress to

20

the asphalt plant.

90.     The Gaia Property was acquired, in part, with the proceeds of a loan from First Union National Bank in the principal amount of $480,000 which was served by a first mortgage (the "Gaia First Mortgage"). Wachovia Bank held the Gaia Mortgage as successor in interest to First Union National Bank until September 22, 2005 when it was assigned to Putnam.

91.     Putnam provided Gaia with an additional loan on September 22, 2005 which was secured by a second mortgage against the Gaia Property. Gaia signed and delivered to Putnam a Consolidation, Extension and Modification Agreement on September 22, 2005 to combine the two (2) mortgages into a single lien in the principal amount of $772,500.00 (the "Gaia Mortgage"). There is a principal balance due on the Gaia Mortgage in the amount of $511,424.07.

92.     Canal has pledged a guaranty of the Gaia Mortgage to Putnam.

93.     On July 17, 2015, Putnam declared a default of the Gaia Mortgage. In its default letter, Putnam has alleged that the payments due for April, Many, June and July 2015 are delinquent in the aggregate amount of $29,473.12.

94.     There is presently a principal balance due on the Gaia Mortgage in the approximate amount of $510,000.00.

95.     In the PSA, to which Gaia is a party, Gaia has agreed to convey the Gaia Property to Thalle for a sale price of $1,200,000.00. Gaia will satisfy the Gaia Mortgage at the closing of the PSA.

96.     Consequently, the Debtor believes that it will not have any financial exposure on its guaranty of the Gaia Mortgage.

## III.

## The Need for Chapter 11 Relief and the Events
## Compelling the Commencement of the Chapter 11 Case

97.     As noted, a combination of operational and financial difficulties in large part due

to decreasing product margins, heavy debt structure and the inability to obtain trade credit,

among other things, led to the rapid downfall of the Debtor. As set forth in further detail below,

by the fourth the quarter of fiscal year 2014, the Debtor was failing to meet projections and faced

an imminent liquidity crisis.

A.      **Pre-Petition Litigation**

98.     The Debtor was faced with a number of pending litigations alleging the Debtor's

breach of contract, as follows:

| Action or Proceeding | Nature of Proceeding | Status of Proceeding |
|---|---|---|
| *Trustees of the Teamsters Local 456; Pension, Health & Welfare, Annuity, Education & Training, S.U.B., Industry Advancement and Legal Service Funds and the Westchester Teamsters Local 456 v. Canal Asphalt, Inc.* Supreme Court, Westchester Cty. Index Number: 56418/2015 | Breach of contract | Disposed |
| *Trustees of Westchester/Putnam Counties Laborers' Local No. 60 Heavy & Highway Benefit Funds; Welfare, Pension, Annuity, Education & Training, Legal Services, Industry Advancement and Political Action Funds and the Laborers' International Union of North America Local No. 60 v. Canal Asphalt, Inc.* U.S. District Court, S.D.N.Y. Case no. 7:13-cv-03620-VB | Breach of contract | Pending |
| *Trustees of Operating Engineers Local 137, 137A, 137B, 137C & 137R Annuity, Pension, Welfare and Apprenticeship Skill Improvement and Safety Funds of the International Union of Operating Engineers Local 137, 137A, 137B, 137C & 137R v. Canal Asphalt, Inc.* U.S. District Court, S.D.N.Y. Case no. 7:15-cv-02086-KMK | Breach of contract | Pending |

| | | |
|---|---|---|
| *Petrillo Contracting, Inc. v. Canal Asphalt, Inc.* Supreme Court, Westchester Cty. Index Number: 53749/2015 | Breach of contract | Pending |
| *Eastern Concrete Materials, Inc. v. Canal Asphalt, Inc.* Supreme Court, Westchester Cty. Index Number: 031654/2015 | Breach of contract | Pending |
| *Pavers & Road Builders District Council Welfare Fund et al v. Core Contracting of NY, LLC, et al.* U.S. District Court, S.D.N.Y. Case No. 1:15-cv-00207-BMC | Breach of contract | Pending |
| *Highway, Road and Street Construction Laborers Local 1010 v. Canal Asphalt, Inc.* AAA Arbitration Case  01-14-0002-1457 | Union arbitration | Pending |
| *4L Equipment Leasing, LLC v. Core Contracting of NY, LLC et. al.* Supreme Court, Westchester Cty. Index Number: 62031/2013 | Enforcement of Guaranty | Disposed |
| *The Annuity, Pension, Welfare and Training Funds of the International Union of Operating Engineers Local 14-00014B, AFL-CIO, by their Trustees, et al. v. Canal Asphalt Inc.* U.S. District Court, S.D.N.Y. Case No. 7:15-cv-03873-RA | Breach of Contract | Pending |
| *Cobra Materials, Inc. v. Canal Asphalt, Inc., Core Contracting of NY, LLC, Petrillo Contracting, Inc., Ohio Casualty Insurance Co. and City of New York* Supreme Court, New York County Index Number: 153971/2015 | Breach of Contract | Pending |
| *CMI Roadbuilding, Inc. v. Canal Asphalt, Inc.* Oklahoma District Court, Oklahoma County Case No. CJ-2015-3851 | Breach of Contract | Pending |

99.    The costs and expenses associated with the defense of these litigations were significant and unaffordable to the Debtor. The Debtor needed a chapter 11 filing to provide a breathing spell from these litigations and the mounting costs to defend them .

**B.      Prepetition Restructuring Efforts**

100.    Within the past 6 months, I approached Putnam for an extension of credit under a working capital line that had been extended to the Debtor's affiliate, Core Contracting. Had this loan extension been granted and working capital been made available, Core Contracting would have been able to actively solicit bids for various construction contracts. In turn, Core Contracting would have been in a position to buy substantial quantities of asphalt from the Debtor. Unfortunately, efforts to obtain credit and/or funding from Putnam were unsuccessful.

101.    During the same period, the Debtor also realized that it would be unable to reopen the asphalt plant for the 2015 season. Consequently, the Debtor endeavored to locate a strategic partner to provide necessary funding to reopen the plant – either in a joint venture or under the terms of a management agreement. When word trickled to the industry about the Debtor's financial difficulties, it was contacted by various entities who inquired about the possibility of a sale of the asphalt plant.

102.    The Debtor engaged in negotiating the terms of a purchase and sale agreement with various entities, including several of its competitors in the asphalt manufacturing business. These discussions included Thalle, who was interested in both a temporary management agreement and an option to acquire the asphalt plant.

103.    Thalle is the owner/operator of an asphalt plant and rock quarry located in Fishkill, New York and a concrete recycling/crushing facility in Elmsford, New York. Thalle, which operates out of Briarcliff Manor, New York, was seeking to further expand its operations into Southern Westchester County.

104.    Over a two-month period, negotiations with Thalle (and others) ultimately led to the PSA, for which the Debtor will seek to obtain approval from this Court.

105.    The sale of the asphalt plant represented the fastest and most likely way to pay its

creditors. For years, the Nigro family, including myself, resisted offers for the purchase of the asphalt plant.

106.    As a result of the willingness of the Debtor to sell its assets in order to satisfy Signature, C.L., New Flow and Putnam, the Debtor was able to achieve standstill agreements with these entities. Although there were default letters ultimately issued by Signature and Putnam, the Debtor was able to complete its negotiations with Thalle without having to defend against additional litigations with these entities.

107.    Negotiations for the acquisition of the Debtor's asphalt plant was not limited to Thalle. Indeed, there were at least 6 meetings with separate potential purchasers – each of whom attended several meetings with me and Canal's management team. Several of the potential purchasers met more than once with the Debtor and several hired counsel to assist in the negotiating process. Confidentiality agreements were secured by Canal from each purchaser. Financial information relating to the Debtor was provided to each prospect. The Debtor's proposed accountant, CohnReznick, has received and reviewed financial information relating to Thalle.

## IV.

## First-Day Pleadings

108.    The Debtor has filed its First Day Pleadings contemporaneously herewith to ensure that the Debtor's business continues to function during this chapter 11 case.

109.    For the reasons set forth below, I submit that (i) the relief requested in the First Day Pleadings is necessary to enable the Debtor to operate with minimal disruption during the pendency of its chapter 11 case and (ii) approval of the First Day Pleadings is warranted.

**Motion of Debtor to (A) Use Cash Collateral Pursuant to
11 U.S.C. § 363, (B) Grant Certain Protections to Prepetition Secured
Parties to 11 U.S.C. §§ 361, 363, 363 and 364, and (D) Schedule a
Final Hearing Pursuant to Fed. R. Bankr. R. 4001(b) and (c)**

110.    By this motion, the Debtor requests entry of interim and final orders granting the Debtor's authority to use cash collateral, and provide adequate protection to the prepetition secured parties.

111.    The Debtor is also seeking authority to use Cash Collateral to, among other things, fund the cash needs related to its operations (including the amounts necessary to administer the chapter 11 case), and provide adequate protection to the Prepetition Secured Parties. The Debtor's access to sufficient working capital and liquidity made through the use of Cash Collateral is vital to the preservation and maintenance of its going concern value.

112.    The Debtor requires the immediate use of Cash Collateral in order to avoid immediate and irreparable harm to its business. Absent the ability to pay usual and normal operating expenses, payroll and supplies, the value of the Debtor's business will be irreparably harmed, as the Debtor will be forced to default on its construction projects.

**V.**

**Information Required by Local Rule 1007-2**

113.    In accordance with Local Rule 1007-2, the schedules attached hereto provide certain information related to the Debtor.

114.    Pursuant to Local Rule 1007-2(a)(3), Schedule 1 hereto lists the names and addresses of the members of, and attorneys for, any committee organized prior to the Commencement Date and a brief description of the circumstances surrounding the formation of the committee and the date of its formation.

115.    Pursuant to Local Rule 1007-2(a)(4), Schedule 2 hereto lists the following information with respect to each of the holders of the Debtor's forty (40) largest unsecured

26

claims on a consolidated basis, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), and telephone number; the name(s) of persons(s) familiar with the Debtor's accounts, the approximate amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured.

116.    Pursuant to Local Rule 1007-2(a)(5), Schedule 3 hereto provides the following information with respect to each of the holders of the five (5) largest secured claims against the Debtor on a consolidated basis: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), and telephone number; the approximate amount of the claim; a brief description of the collateral securing the claim; an estimate of the value of the collateral, and whether the claim or lien is disputed.

117.    Pursuant to Local Rule 1007-2(a)(6), Schedule 4 hereto provides a summary of the (unaudited) assets and liabilities for the Debtor.

118.    Pursuant to Local Rule 1007-2(a)(7), Schedule 5 hereto provides the following information: the number and classes of shares of stock, debentures, and other securities of the Debtor that are publicly held and the number of record holders thereof; and the number and classes of shares of stock, debentures, and other securities of the Debtor that are held by the Debtor's directors and officers, and the amounts so held.

119.    Pursuant to Local Rule 1007-2(a)(8), Schedule 6 hereto provides a list of all of the Debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor, or agent for any such entity, giving the name, address, and telephone number of each such entity and the location of the court in which any proceeding relating thereto is pending.

120.     Pursuant to Local Rule 1007-2(a)(9), Schedule 7 hereto provides a list of the premises owned, leased, or held under other arrangement from which the Debtor operate its business.

121.     Pursuant to Local Rule 1007-2(a)(10), Schedule 8 hereto provides the location of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States.

122.     Pursuant to Local Rule 1007-2(a)(11), Schedule 9 hereto provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtor or its property where a judgment against the Debtor or a seizure of its property may be imminent.

123.     Pursuant to Local Rule 1007-2(a)(12), Schedule 10 hereto provides a list of the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

124.     Pursuant to Local Rule 1007-2(b)(1)-(2)(A), Schedule 11 hereto provides the estimated amount of weekly payroll to the Debtor's employees (not including officers, directors, stockholders, and partners) and the estimated amount to be paid to officers, stockholders, directors, members of any partnerships, and financial and business consultants retained by the Debtor for the thirty (30) day period following the filing of the Debtor's chapter 11 petition, as the Debtor intends to continue to operate its businesses.

125.     Pursuant to Local Rule 1007-2(b)(3), Schedule 12 hereto provides, for the thirty (30) day period following the filing of the chapter 11 petition, a list of estimated cash receipts and disbursements, net cash gain or loss, obligations, and receivables expected to accrue that remain unpaid, other than professional fees.

**V.**

**Conclusion**

28

126.    The above illustrates the factors that have precipitated the commencement of the chapter 11 cases and the critical need for the Debtor to restructure its financial affairs and operations. The provisions of chapter 11 will assist in enabling the Debtor to achieve its objective of liquidating itself to the benefit of its economic stakeholders, employees, and the public it serves.

Dated: New York, New York
      July 31, 2015

                                    _____
                                      AUGUST M. NIGRO III

T:\Kushner\KDrive\Kushner\Canal Asphalt - Chapter 11\RULE 1007-2 Affidavit of August Nigro.doc

## **Schedule 1**

**Committees**

Pursuant to Local Rule 1007-2(a)(3), to the best of the Debtor's knowledge and belief, there were no committees organized prior to the order for relief in the Debtor's chapter 11 case.

## Schedule 2

## Consolidated List of 40 Largest Unsecured Claims (Excluding Insiders)[1]

Pursuant to Local Rule 1007-2(a)(4), the following is a list of creditors holding, as of July 31, 2015, the forty (40) largest noncontingent, unsecured claims against the Debtor, on a consolidated basis, excluding claims of insiders as defined in 11 U.S.C. § 101.

| No. | Creditor | Contact, Mailing Address, Telephone Number/Fax Number, Email | Nature of Claim | C U D P[2] | Amount of Claim |
|-----|----------|-------------------------------------------------------------|-----------------|-----------|-----------------|
| 1 | Petrillo Contracting Inc. | 41 Edison Ave. Mt. Vernon, NY 10550 | | D C | $7,000,000.00 |
| 2 | Putnam County Savings Bank | P.O. Box 417 2477 Route 6 Brewster, NY 10509 | | D C | $3,143,294.19 |
| 3 | Allied World Assurance Company (U.S.) Inc. | 30 S 17th St. Philadelphia, PA 19103 | | D C | $1,622,641.00 |
| 4 | Eastern Concrete Materials | 475 Market St., Ste. 302 Elmwood Park, NJ 07407 Phone: 201-797-7979 Fax: 201-797-1155 | | D | $ 770,820.86 |
| 5 | Cobra Materials, Inc. | P.O. Box 4025 Middletown, NJ 07748 Phone: 732-796-9122 | | D | $ 309,581.85 |
| 6 | Con Edison | Corporate Customer Group 4 Irving Place, 9th Fl. New York, NY 10003 | | D | $ 279,826.61 |
| 7 | A. Colarusso & Son, Inc. | P.O. Box 302 Hudson, NY 12534 Phone: 518-828-3218 Fax: 518-828-0546 | | D | $ 258,193.25 |
| 8 | Core Contracting of NY LLC | 687 S Columbus Ave. Mt. Vernon, NY 10550 | | | $ 182,573.96 |
| 9 | Intercounty Paving Associates | 859 Willow Grove St. Hackettstown, NY 07840 | | D | $ 158,999.99 |
| 10 | Padilla Construction Services, Inc. | 299 Main St. Westbury, NY 11590 Phone: 516-338-6848 | | | $ 125,287.71 |
| 11 | C.L. Consulting & Management | 299 Duffy Ave. Hicksville, NY 11801 | | D | $ 124,355.00 |

---

[1] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtor. All claims are subject to customary offsets, rebates, discounts, reconciliations, credits, and adjustments, which are not reflected on this Schedule.

[2] C: Contingent; U: Unliquidated; D: Disputed; P: Partially Secured

| | | | | | |
|---|---|---|---|---|---|
| 12 | WST Team Allied Benefit | 160 S. Central Ave.<br>Elmsford, NY 10523<br>Phone: 914-592-9330 | | D | $  123,147.12 |
| 13 | American Express | P.O.Box 360001<br>Ft Lauderdale, FL 33336-0001 | | | $  87,362.00 |
| 14 | Local 175 Funds Benefit | 99 Mineola Avenue<br>Roslyn Heights, NY  11577<br>Phone: 516-487-3110 | | D | $  73,760.04 |
| 15 | Westchester Paving & Masonry Corp. | 26 Crest Drive<br>White Plains, NY 10607<br>Phone: 914-909-6347<br>Fax: 914-345-8285 | | D | $  72,717.00 |
| 16 | IROC Industries | P.O. Box 244<br>Island Park, NY  11558<br>Phone: 516-432-4281 | | D | $  66,181.02 |
| 17 | Direct Energy Business | P.O. Box 905243<br>Charlotte, NC 28290- 5243 | | D | $  64,207.39 |
| 18 | Local 137 Joint Funds | 1360 Pleasantville Road<br>Briarcliff Manor, NY 10510<br>Phone: 914-762-1268<br>Fax: 914-762-4029 | | D | $  63,240.11 |
| 19 | Pavers Funds Benefit | 136-25 37th Ave., 4th Fl<br>Flushing, NY 11354<br>Phone: 718-321-3063 | | D | $  62,834.94 |
| 20 | City of Mount Vernon, NY | P.O. Box 1006<br>Dept. of Finance<br>Mt. Vernon, NY  10551-1006<br>Phone: 914-665-2300<br>Fax: 914-665-2496 | | | $  62,048.04 |
| 21 | Key Bank | 127 Public Square<br>Cleveland, OH  44114 | | | $  50,122.39 |
| 22 | American Pavement SPLST, LLC | 79 Cross St.<br>Danbury, CT 06810<br>Phone:  203-792-4800 | | D | $  48,000.00 |
| 23 | Exc Union No 731 Benefits | 34-11 35th<br>Astoria, NY 11106 | | D | $  32,346.65 |
| 24 | Blackridge Construction | P.O. Box 1582<br>New York, NY 10035<br>Phone: 917-992-3722 | | D | $  27,408.85 |
| 25 | CC & T | 1545 Hook Rd.<br>Folcroft, PA 19032<br>Phone: 610-586-2710<br>Fax:  610-586-2740 | | D | $  27,351.25 |
| 26 | Core Construction of NY LCC | 687 S Columbus Ave.<br>Mt. Vernon, NY  10550 | | | $  25,316.76 |
| 27 | Sun Star Industries Corp. | 202-35 Foothill Ave., Apt. B71<br>Hollis, NY 11423<br>Phone: 718-464-0330 | | D | $  24,281.50 |
| 28 | Almar Supplies | 57-05 47th St<br>Maspeth, NY 11378<br>Phone: 718-456-8636<br>Fax: 718-456-8636 | | D | $  24,008.25 |
| 29 | NYS Department of Labor | Bldg. 12<br>W.A. Harriman Campus<br>Albany, NY  12240 | | | $  21,463.59 |

| | | | | | |
|---|---|---|---|---|---|
| 30 | Northeast Sweepers, LLC | 143 Valley St.<br>Belleville, NJ 07109<br>Phone: 973-751-6200<br>Fax: 973-333-4499 | | D | $ 21,410.00 |
| 31 | CMI Roadbuilding Inc. | P.O. Box 204622<br>Dallas, TX 75320-4622 | | D | $ 20,512.23 |
| 32 | Local 60 Administrative Fund | 140 Broadway<br>Hawthorne, NY 10532<br>Phone: 914-769-2440<br>Fax: 914-769-4023 | | D | $ 17,554.24 |
| 33 | A&G Trucking | 247-13 136th St.<br>Rosedale, NY 11422 | | D | $ 16,934.00 |
| 34 | Scarsdale Police Department | 50 Tompkins Rd.<br>Scarsdale, NY 10583<br>Phone: 914-722-1200 | | | $ 16,684.00 |
| 35 | NYC District Council of Carpenters Local Union 1556 | 395 Hudson St., 9th Fl.<br>New York, NY 10014<br>Phone: 212-366-7373<br>Fax: 212-366-7845 | | | $ 15,771.27 |
| 36 | Area Dist. Inc. | P.O. Box 770468<br>61-02 31st Ave<br>Woodside, NY 11377<br>Phone: 718-726-9200<br>Fax: 718-626-0712 | | D | $ 14,480.79 |
| 37 | I.U.O.E. IO 14-14b | 141-57 Northern Blvd.<br>Flushing , NY 11354<br>Phone: 718-939-1489<br>Fax: 718-939-2034 | | D | $ 11,292.19 |
| 38 | Great American Custom Ins. | NW 6084<br>P.O. Box 1450<br>Minneapolis, MN 55485 | | D | $ 10,000.00 |
| 39 | Sonneborn, LLC | 26309 Network Place<br>Chicago, IL 60673 | | D | $ 8,847.81 |
| 40 | Georgakis Realty | 310 Nassau Ave., FL #2<br>Brooklyn, NY 11222<br>Phone: 718-387-4881 | | D | $ 8,400.00 |

**Schedule 3**

**List of Holders of Five Largest Secured Claims**

Pursuant to Local Rule 1007-2(a)(5), the following chart lists the creditors holding, as of July 31, 2015, the five (5) largest secured, non-contingent claims against the Debtor, excluding claims of insiders as defined in 11 U.S.C. § 101.

| No. | Creditor | Contact, Mailing Address, Telephone Number/Fax Number, Email | Amount of Claim | Type of Collateral |
|---|---|---|---|---|
| 1 | Signature Bank | 225 Broad Hollow Road Melville, NY 11747 646-822-1500 | $3,534685.97 | Second mortgage on 800 Canal St.[3] |
| 2 | Signature Bank | 225 Broad Hollow Road Melville, NY 11747 646-822-1500 | $1,798,634.24 | Third mortgage on 800 Canal St. |
| 3 | C.L. Consulting & Management Corp. | 625 Mt. Hope Rd. Wharton, NJ 07885 973-366-4748 | $1,098,762.10 | Sixth mortgage on 800 Canal St. |
| 4 | New Flow LLC | 4 Taylor Rd. Elmsford, NY 10523 | $540,000.00 | Seventh mortgage on 800 Canal Street |
| 5 | Signature Bank | 225 Broad Hollow Road Melville, NY 11747 646-822-1500 | $354,541.67 | Fifth mortgage on 800 Canal St. |

---

[3] The first and fourth mortgages on the Debtor's property located at 800 Canal Street, Mount Vernon, New York ("800 Canal"), have been satisfied. Accordingly, Signature Bank effectively holds a first, second and third lien mortgage on 800 Canal; C.L. Consulting & Management Corp. effectively holds a fourth lien mortgage on 800 Canal; and New Flow LLC effectively holds a fifth lien mortgage on 800 Canal.

## Schedule 4

### Summary of the Debtor's Assets and Liabilities

Assets:

| | |
|---|---|
| Real Property | $12,800,000.00 |
| Personal Property | $7,564,600.73 |
| Total Assets: | $20,364,600.73 |

| | |
|---|---|
| Liabilities: | |
| Secured Claims | $7,671,048.53 |
| Unsecured Priority Claims | $136,228.66 |
| Unsecured Claims | $5,200,000.00[4] |
| | $13,007,277.19 |

---

[4] The Debtor estimates that there are approximately $5,200,000 in legitimate, allowable unsecured claims.

15-23094-rdd    Doc 10    Filed 08/01/15    Entered 08/01/15 15:20:07    Main Document
Pg 36 of 44


**Schedule 5**

**The Debtor's Securities**

Pursuant to Local Rule 1007-2(a)(7), the Debtor submits that it has not issued securities that are registered with the Securities and Exchange Commission. As of the Commencement Date, 100 shares, representing one hundred percent (100%) of the issued and outstanding equity interests of Canal Asphalt, Inc. were held by August Nigro.

## Schedule 6

### The Debtor's Property Not in the Debtor's Possession

Local Rule 1007-2(a)(8) requires the Debtor to list property that is in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditor, or agent for any such entity.

In the ordinary course of business, on any given day, property of the Debtor (including security deposits or other collateral with counterparties to certain commercial relationships) is likely to be in the possession of various third parties, including, shippers, common carriers, materialmen, logistics vendors, tooling vendors, distributors, expeditors, warehousemen, other related service providers, or agents, where the Debtor's ownership interest is not affected. Because of the constant movement of this property, providing a comprehensive list of the persons or entities in possession of the property, their addresses and telephone numbers, and the location of any court proceeding affecting the property would be impractical.

## Schedule 7

Pursuant to Local Rule 1007-2(a)(9), the following lists the property or premises owned, leased, or held under other arrangement from which the Debtor operate its business.

| Owner | Street Address | City | State | ZIP Code |
|---|---|---|---|---|
| Canal Asphalt, Inc. | 800 Canal Street | Mount Vernon | NY | 10550 |
| Gaia Development LLC[5] | 687 Columbus Avenue | Mount Vernon | NY | 10550 |

---

[5] The Debtor has no lease or other formal arrangement with Gaia Development; the Debtor's use of this property is solely for convenience.

**<u>Schedule 8</u>**

**Location of Debtors' Assets, Books, and Records**

Pursuant to Local Rule 1007-2(a)(10), the following lists the locations of the Debtor's substantial assets, the location of their books and records, and the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States.

**Location of Debtors' Substantial Assets**

The Debtor's assets of more than $20 million (unaudited and subject to change) are located in Mount Vernon, New York.

**Books and Records**

The Debtor's books and records are located at 800 Canal Street, Mount Vernon, NY.

**Debtors' Assets Outside the United States**

The Debtor maintains no assets outside the United States.

## Schedule 9

Pursuant to Local Rule 1007-2(a)(11), to the best of the Debtor's knowledge and belief, the following is a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtor or its property where a judgment against the Debtor or a seizure of its property may be imminent.

| Action or Proceeding | Nature of Proceeding | Status of Proceeding |
|---|---|---|
| Trustees of the Teamsters Local 456; Pension, Health & Welfare, Annuity, Education & Training, S.U.B., Industry Advancement and Legal Service Funds and the Westchester Teamsters Local 456 v. Canal Asphalt, Inc. Supreme Court, Westchester Cty. Index Number: 56418/2015 | Breach of contract | Disposed |
| Trustees of Westchester/Putnam Counties Laborers' Local No. 60 Heavy & Highway Benefit Funds; Welfare, Pension, Annuity, Education & Training, Legal Services, Industry Advancement and Political Action Funds and the Laborers' International Union of North America Local No. 60 v. Canal Asphalt, Inc. U.S. District Court, S.D.N.Y. Case no. 7:13-cv-03620-VB | Breach of contract | Pending |
| Trustees of Operating Engineers Local 137, 137A, 137B, 137C & 137R Annuity, Pension, Welfare and Apprenticeship Skill Improvement and Safety Funds of the International Union of Operating Engineers Local 137, 137A, 137B, 137C & 137R v. Canal Asphalt, Inc. U.S. District Court, S.D.N.Y. Case no. 7:15-cv-02086-KMK | Breach of contract | Pending |
| Petrillo Contracting, Inc. v. Canal Asphalt, Inc. Supreme Court, Westchester Cty. Index Number: 53749/2015 | Breach of contract | Pending |
| Eastern Concrete Materials, Inc. v. Canal Asphalt, Inc. Supreme Court, Westchester Cty. Index Number: 031654/2015 | Breach of contract | Pending |

| | | |
|---|---|---|
| Pavers & Road Builders District Council Welfare Fund et al v. Core Contracting of NY,  LLC, et al. U.S. District Court, S.D.N.Y. Case No. 1:15-cv-00207-BMC | Breach of contract | Pending |
| Highway, Road and Street Construction Laborers Local 1010 v. Canal Asphalt, Inc. AAA Arbitration Case  01-14-0002-1457 | Union arbitration | Pending |
| 4L Equipment Leasing, LLC v. Core Contracting of NY, LLC Supreme Court, Westchester Cty. Index Number: 62031/2013 | Enforcement of Guaranty | Disposed |
| The Annuity, Pension, Welfare and Training Funds of the International Union of Operating Engineers Local 14-00014B, AFL-CIO, by their Trustees, et al. v. Canal Asphalt Inc. U.S. District Court, S.D.N.Y. Case No. 7:15-cv-03873-RA | Breach of Contract | Pending |
| Cobra Materials, Inc. v. Canal Asphalt, Inc., Core Contracting of NY, LLC, Petrillo Contracting, Inc., Ohio Casualty Insurance Co. and City of New York Supreme Court, New York County Index Number: 153971/2015 | Breach of Contract | Pending |
| CMI Roadbuilding, Inc. v. Canal Asphalt, Inc. Oklahoma District Court, Oklahoma County Case No. CJ-2015-3851 | Breach of Contract | Pending |
| Sun Star Industries Corp. v. Canal Asphalt, Inc. Supreme Court, Westchester Cty. Index Number: 58885/2015 | Breach of Contract | Pending |

## **Schedule 10**

### **Senior Management**

Pursuant to Local Rule 1007-2(a)(12), to the best of the Debtor's knowledge and belief, the following is a list of the names of the individuals who comprise the debtor's existing senior management, their tenure with the debtor, and a brief summary of their relevant responsibilities and experience.

| Name & Position | Responsibilities & Experience |
|---|---|
| **August Nigro**<br><br>*President* | General oversight of the Debtor's operations. |
| **Robert Komosinski**<br><br>*Controller* | Financial day-to-day decisions in conjunction with the President. |

## Schedule 11

### Payroll

Pursuant to Local Rule 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll to the Debtor's employees (not including officers, directors, and stockholders) and the estimated amount to be paid to officers, stockholders, directors, and financial and business consultants retained by the Debtor for the 30-day period following the filing of the chapter 11 petition.

| | |
|---|---|
| **Payments to Employees (Not Including Officers, Directors and Stockholders)** | $38,807.39 |
| **Payments to Officers, Stockholders, and Directors** | $15,165.50[6] |
| **Payments to Financial and Business Consultants** | $30,000.00[7] |

---

[6] The Debtor does not anticipate making any payments to Stockholders or Directors in the 30-day period following the filling of the chapter 11 petition.

[7] This does not include any payments to the Debtor's attorneys or auditors. Pursuant to the retention applications filed for these professionals, the Debtor will not make any such payments in the 30-day period following the filing of the chapter 11 petition.

## Schedule 12

### Cash Receipts and Disbursements,
### Net Cash Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Rule 1007-2(b)(3), the following provides, for the 30-day period following the filing of the chapter 11 petition, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| | |
|---|---|
| **Cash Receipts** | $550,000.00 |
| **Cash Disbursements** | $540.145.89 |
| **Net Cash Gain** | $854.11 |
| **Unpaid Obligations** | $0 |
| **Uncollected Receivables** | $1,000,000.00 |

t:\scottdsimon\canal asphalt\chapter 11\petition and schedules\local rule 1007-2 schedules.docx