**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                              :
In re:                                                        :                  **Chapter 11**
                                                              :
**CANAL ASPHALT, INC.,**                                       :                  **Case No. 15-23094 (RDD)**
                                                              :
                                       Debtor.                :
                                                              :
-----------------------------------------------------------------x

## MEMORANDUM OF DECISION ON DEBTOR'S OBJECTION TO CLAIM OF PECKHAM MATERIALS CORP.

**Appearances:**

Counsel: Goetz Fitzpatrick LLP, by Gary M. Kushner, Esq. and Scott D. Simon, Esq. for the Debtor.

      Herrick, Feinstein LLP, by Robert L. Rattet, Esq. for Peckham Materials Corp.

Hon. Robert D. Drain, United States Bankruptcy Judge.

      Before the Court is the objection (the "Objection") of the post-confirmation debtor herein, Canal Asphalt, Inc. (the "Debtor") to Peckham Materials Corp.'s ("Peckham") claim against its estate (Claim No. 27). After the hearing held by the Court on the Objection on August 31, 2016 and the parties' post-hearing submissions, there are two remaining aspects of the Objection. First, the Debtor objects to Peckham's right to payment of a note secured by a so-called "fifth" mortgage on the Debtor's property, contending that by its terms the mortgage and debt it secures should be deemed released. Second, the Debtor objects to most of Peckham's claim for its attorney's fees under 11 U.S.C. § 506(b) on the basis that such fees are for services not covered by that section or the relevant notes and mortgages. The Debtor has waived the third component of its Objection at page 15 of its Proposed Findings of Fact and Conclusions of Law in Connection with Objections to Claim No. 27, filed November 30, 2016 [Dkt. No. 414] (the "Debtor's Proposed Findings"):

"[T]he Debtor has withdrawn its objection to the allowance or payment of pre- and post-petition default interest on the ground that . . . Claim No. 27 indicated on an attached chart that default interest was a 'penalty;' and (b) default interest was only payable on and after the date that [the creditor] actually accelerated the debt."

Based on the record and for the reasons set forth below, the Court holds that (1) Peckham has a claim under the note covered by the "fifth" mortgage but that such claim is unsecured, the "fifth" mortgage by its terms being deemed released, and (2) Peckham's claim for its attorney's fees is substantially reduced to the amount properly allowable under 11 U.S.C. § 506(b) and the relevant agreements.

### Jurisdiction

Pursuant to 28 U.S.C. §§ 157(a) - (b) and 1334(b), the Court has jurisdiction over the Objection, which is a core proceeding under 28 U.S.C. § 157(b)(2)(B) that the Court may decide by a final order under *Stern v. Marshall*, 564 U.S. 462, 497 (2011). The Court's jurisdiction to decide claim objections was reserved in the Debtor's chapter 11 plan and paragraph I of the Court's order, dated May 10 2016, confirming the plan, and, because determination of the Objection is necessary to establish distributions under the plan, the dispute has a close nexus to the plan. Thus, the Court retains post-confirmation jurisdiction over the Objection. *Cohen v. CDR Creances, S.A.S. (In re Euro-American Lodging Corp.)*, 549 Fed. Appx 52, 54 (2d Cir. 2014); *Ace Am. Ins. Co. v. DPH Hldgs. Corp. (In re DPH Hldgs. Corp.)*, 448 Fed. Appx 134, 137 (2d Cir. 2011); *SP Special Opportunities, LLC v. LightSquared, Inc. (In re LightSquared, Inc.)*, 539 B.R. 232, 240-42 (S.D.N.Y. 2015).

**Facts**

The Debtor began its chapter 11 case on July 31, 2015.  It operated an asphalt plant in Mount Vernon, New York, but early in the case it decided to sell its assets.  Although the originally intended private sale fell through, the Debtor pursued a public auction sale,[1] which occurred, and thereafter the Debtor confirmed a chapter 11 plan that provides for the distribution of the sale proceeds to holders of allowed claims.

Signature Bank ("Signature") timely filed a secured claim in this case in the amount of "at least $5,990,642.13" (Claim No. 27 on the claims register), asserting in Schedule A to Claim No. 27 a "second," "third" and "fifth" mortgage securing related mortgage notes.  (The parties have so dubbed the three mortgages notwithstanding that before the start of the chapter 11 case the first and fourth mortgages were satisfied, leaving Signature in fact with first, second and third mortgages.  Debtor's Proposed Findings, at ¶¶ 32, 40.)  Exhibit F to Claim No. 27 lists the loan balances under each of the mortgage notes and, for the period after April 1, 2015, the date of the declared default on the notes (see Exhibit E to Claim No. 27, Signature's June 18, 2015 acceleration notice), interest thereon at an "11% penalty rate."[2]  The proof of claim also asserts a right to accrued legal fees as well as accruing, postpetition legal fees and postpetition interest, to be determined under 11 U.S.C. § 506(b).

At the start of this case, Peckham was not a creditor of the Debtor; instead, it was a competitor with the goal of acquiring the Debtor for the lowest price possible or, perhaps, seeing the Debtor simply cease business.  Transcript of August 27, 2015 hearing [Dkt. No. 87], at 16, 25.

---

[1] The Debtor simultaneously pursued a standalone reorganization plan, in the event that there were no acceptable bids for its assets.

[2] It is clear from the mortgage notes -- and Peckham has acknowledged -- that to the extent one is entitled to 11% post-default interest thereunder, such interest accrues from April 11, 2015 (following expiration of the cure period under paragraph 3(a) of the respective mortgage notes), not April 1, 2015, the default date.  See Peckham's Findings of Fact and Conclusions of Law with Respect to Debtor's Objection to Claim No. 27, filed November 11, 2016 [Dkt. No. 409] ("Peckham's Proposed Findings"), at 6.

To obtain standing in the case, Peckham originally purchased a small unsecured claim, but this did not carry much weight with parties in interest or the Court. Id., at 25, 35-6, 75. By October 29, 2015, however, Peckham bought Signature's Claim No. 27, filing a notice of the transfer under Fed. R. Bankr. P. 3001 [Dkt. No. 109]. Thereafter, Peckham consistently sought to acquire the Debtor either through a chapter 11 plan or a sale process in which it could credit bid this secured claim under 11 U.S.C. § 363(k). See, e.g., Dkt. Nos. 122, 144, and 171, in which Peckham asserted its position at ¶¶ 10, 11 and 31, 4 and 7(b), and 7 and 13-17, respectively. The following colloquy between the Court and Peckham's counsel at the hearing on the Objection encapsulates this point:

> The Court: I know that Peckham's main focus on the case was on the sale.

> Mr. Rattet: That's correct, Your Honor.

Transcript of August 31, 2016 hearing on the Objection [Dkt. No. 394] ("Aug. 31 Tr."), at 42-43.[3]

On February 9, 2016, the Court entered an amended order authorizing an auction process and bid procedures (the "Sale Procedures Order") for the disposition of the Debtor's asphalt plant and substantially all the Debtor's other assets. [Dkt. No. 180]. Under ¶ 5(b) of the Notice of Auction and Sale Procedures approved by the Sale Procedures Order, Peckham had the right to credit bid in the secured amount of $5,990,642.13, representing the fixed amount of Claim No. 27. However, the Sale Procedures Order also gave the Debtor the right to object to any claim asserted by Peckham (as well as gave Peckham the right to assert additional claims for allowance or distribution purposes and to seek an order of the Court permitting it to credit bid the amount of its claim as of the date of the auction). Id.

There was competitive bidding at the April 18, 2016 auction, which ended with a high bid from Peckham of $12,750,000. The Court approved that bid by order entered May 10, 2016 [Dkt.

---

[3] See also id., at 42: Mr. Rattet: "[A]ll that Peckham wanted from the inception of this case was an open and notorious field and option."

No. 305], and it was incorporated in the Debtor's chapter 11 plan.  The Debtor and Peckham closed

the sale on June 10, 2016.  Debtor's Proposed Findings, at ¶ 48.

**Discussion**

I.    The "Fifth" Mortgage Dispute

Claim No. 27 asserts a secured claim based on the "fifth" mortgage executed by Signature

and the Debtor on June 30, 2008, which secured the Debtor's obligations under a related mortgage

note of the same date in the principal amount of $250,000.  Both of these documents are attached

as Exhibit C to Claim No. 27.  In its response to the Objection, Peckham asserted that this portion

of its secured claim comprises the unpaid $250,000 principal amount, plus the accrued interest set

forth in Exhibit F to Claim No. 27, plus additional accrued and accruing postpetition interest.

Response of Peckham Materials Corp to Debtor's Objection, dated August 24, 2016 [Dkt. No.

374] ("Response"), at ¶¶ 11-12.  Also, Peckham asserted a secured claim for $130,000 of its

postpetition attorney's fees,[4] although it has not allocated those fees among the three Signature

mortgages and mortgage notes that it purchased.  Id., at ¶ 4. The Debtor acknowledges the validity

and perfection of the "fifth" mortgage[5] but contends that by its plain terms it nevertheless should

be deemed released.

The Debtor bases this argument on ¶ 55 of the "fifth" mortgage, which states:

> The purpose of this Mortgage is to secure the payment of a commitment fee
> to the Mortgagee in the amount of $250,000, which has been earned by the
> Mortgagee on the date hereof and is due and payable in accordance with the Note
> on the occurrence of a default hereunder.  **However, upon the payment in full of
> each of the Second Mortgage, the Third Mortgage and the Fourth Mortgage**

---

[4] As discussed below, it has reduced that claim to $65,000.

[5] Interim Stipulation and Consent Order Authorizing the Debtor to Use Cash Collateral Order, dated August 17, 2015 [Dkt. No. 49], at ¶ (B)(1)and 25; Debtor's Proposed Findings, at ¶ 40.  (In explaining the context of the "fifth" mortgage, the Debtor suggested that the transaction was not supported by reasonably equivalent value or fair consideration, but accepts that even if it had not waived the right to challenge the transaction in the Cash Collateral Order, the time to seek to avoid the transfer has passed.  Aug. 31 Tr., at 13-14.)

**on or before the <u>scheduled</u> maturity date, this Mortgage shall be released by the Mortgagee without payment of principal and interest.**

(Emphasis added.)

The Debtor's "fourth" mortgage with Signature was satisfied on a timely basis prepetition, in June 2012.  Debtor's Proposed Findings, at ¶ 32.  Moreover, Peckham's winning bid at the bankruptcy auction was sufficient to satisfy the "second" and "third" mortgages by credit bid on the sale's closing date, June 16, 2016, well in advance of the July 1, 2018 scheduled maturity dates under the corresponding mortgage notes.  See page 2 of the respective mortgage notes secured by the "second" and "third" mortgages, copies of which are attached as Exhibits A and B respectively to Claim No. 27, for the notes' "Maturity Dates."  Thus, the Debtor argues, under ¶ 55 of the "fifth" mortgage that mortgage must be "released by [Peckham] without payment of principal and interest," the "second" through "fourth" mortgages having been paid in full before their "scheduled" maturity dates.

Peckham contended, to the contrary, that because it accelerated the mortgage notes covered by the "second" and "third" mortgages on June 18, 2015, those notes and mortgages were deemed matured as a matter of law on that date.  Response, at ¶¶ 14-16; Aug. 31 Tr., at 35.  Because that mortgage debt was paid after acceleration, Peckham argued that ¶ 55's release provision was never triggered.  <u>Id.</u>

However, the plain language of ¶ 55 of the "fifth" mortgage employs the term "scheduled" maturity date, which clearly means the maturity date prescribed by the parties in effect when the "fifth" mortgage and related mortgage note were agreed, not a  deemed maturity arising upon Signature's later acceleration of the debt.  That the parties understood the difference between the terms "maturity" and "acceleration" is evidenced by their use of the former term in addition to "acceleration," in ¶ 4 of the "fifth" mortgage:

6

Upon a default under this Mortgage, or if the principal sum secured by this Mortgage shall not be paid at its maturity, or on its acceleration pursuant to Paragraph 20 or any other provision hereof, interest thereon shall thereafter be computed and paid at the Delinquency Rate.

Under New York law, which governs this dispute between New York parties under a mortgage on New York real property entered into and performed in New York, the Court must enforce the parties' intentions, and those intentions are governed by the plain and unambiguous terms of their contract. *J. D'Addario & Co., Inc. v. Embassy Indus., Inc.*, 20 N.Y.3d 113, 118 (2012); *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). Here, those terms speak for themselves in ¶ 55 of the "fifth" mortgage. Moreover, under New York law, contractual provisions are to be construed in context, disfavoring interpretations that render material terms superfluous, as would Peckham's conflation of "scheduled maturity" in ¶ 55 with "maturity" and "acceleration" in ¶ 4, quoted above. *Lawyer's Fund for Client Protection of State of N.Y. v. Bank Leumi Trust Co.*, 94 N.Y. 2d 398, 404 (2000); *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002).[6] Because the "second," "third" and "fourth" mortgage notes were paid before their scheduled maturities, therefore, ¶ 55 of the "fifth" mortgage has, in fact, been triggered, requiring under its plain terms the release of that mortgage "without payment of principal or interest."

This was the only argument Peckham raised on the "fifth" mortgage issue in its Response or at the August 31, 2016 hearing. Accordingly, from the bench the Court granted that portion of the Objection. Aug. 31 Tr., at 36-38. The parties were instructed not to submit an order on the "fifth" mortgage issue, however, because other aspects of the Objection pertaining to default

---

[6] Although it did not need to do so given the legal principles noted above, the Debtor also provided a factual context for its argument: because the "fifth" mortgage and related note were agreed only as a fee for assenting to a workout of the prior Signature debt, it was logical for the fee to be waived if that debt was prepaid before the original term,. Aug. 31 Tr., at 14.

interest and attorney's fees required further submissions and evidence, id., at 51-52, and the Court

wanted one order to cover the entire Objection.  Id., at 53.

Then, on October 4, 2016, Peckham filed a document which it captioned a "sur-reply"

[Dkt. No. 397], although it is fair to say that, after the August 31, 2016 hearing and the Court's

bench ruling, no one would have expected more submissions on the "fifth" mortgage issue except

on appeal or under Fed. R. Bankr. P. 9023 or 9024, incorporating Fed. R. Civ. P. 59 and 60.  In its

"sur-reply" Peckham referred to ¶ 8 of the mortgage note secured by the "fifth" mortgage, arguing,

for the first time, that it limited the release of the fifth mortgage and the obligation to pay principal

and interest under ¶ 55 of that agreement to situations where no event of default had occurred

under the note.  Paragraph 8 of the note states,

> No principal or interest on this Note shall be due or payable in the event the Second Mortgage (as defined in the Mortgage), the Third Mortgage (as defined in the Mortgage) and the Fourth Mortgage (as defined in the Mortgage) are each paid in full on or prior to the scheduled maturity date of such loans, **and no event of default shall have occurred and be continuing immediately prior to such payment in full.**  **The foregoing shall not be construed as a waiver of the payment of all principal and interest in the case of an Event of Default hereunder.**

(Emphasis added.)

The Debtor responded by contending that it was too late for Peckham to make this

argument.  [Dkt. No. 400].  However, a court's oral ruling can be modified at a later date.  *See In*

*re Rebeor*, 89 B.R. 314, 320 (Bankr. N.D.N.Y. 1988) (stating that "[t]he Court's oral ruling on

March 15, 1988 converting Debtor's Chapter 13 case to a Chapter 7 "as of today" was not operative

on utterance.").  Moreover, "the Second Circuit has made it abundantly clear that a district court

has discretion to consider a belatedly-raised argument." *Am. Hotel Int'l Grp. Inc. v. OneBeacon*

*Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009), *citing Ruggiero v. Warner-Lambert Co.*, 424

F.3d 249 (2d Cir. 2005).  Exercise of that discretion is warranted when a party has an opportunity

to respond to its opponent's new argument, *see Sacchi v. Verizon Online LLC*, No. 14-CV-423
(RA), 2015 U.S. Dist. LEXIS 48971, at *1-2 n.1 (S.D.N.Y. Apr. 14, 2015) (plaintiff may raise an
issue for the first time in reply brief because the opposing party had the opportunity to respond),
or where the record shows that the opposing party was or should have been aware of the issue.
*Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 53 (2d Cir. 1996).

Here, the Debtor would not be unduly prejudiced by the Court's consideration of
Peckham's new, post-hearing argument.  The Court gave the Debtor the chance to respond to
Peckham's sur-reply, which the Debtor did before the Court decided the rest of the Objection.
Also, although Peckham did not refer to ¶ 8 of the "fifth" mortgage note in its Response or at the
hearing, the note was in the record as an attachment to Claim No. 27, and there is no suggestion
that its construction requires re-opening the record to take evidence.  Without relying on a party's
sur-reply, a court can rely on the evidence that is already part of the record for its final decision.
*Goldstein v. Laurent*, 2011 U.S. Dist. LEXIS 89121, at *24-25 n.5 (S.D.N.Y. Aug. 2, 2011)
(denying summary judgment based "upon a statement included in the record submitted by
plaintiffs with their own motion papers and not mentioned in defendant's sur-reply").  Therefore,
the Court will consider Peckham's "sur-reply" and the Debtor's response, without imposing any
additional burden on Peckham.

Having carefully reviewed both ¶ 55 of the "fifth" mortgage and ¶ 8 of the related mortgage
note, the Court revises its bench ruling in part.  Those two provisions at first glance might appear
to be inconsistent, but they are reconcilable.  Paragraph 55 states that if the "second," "third" and
"fourth" mortgages are paid in full on or before their scheduled maturity dates, the "fifth" mortgage
shall be released by the mortgagee and no principal or interest shall be payable.  Paragraph 8 of
the "fifth" mortgage note says nothing about the release of the "fifth" mortgage upon the full

payment of the "second," "third" and "fourth" mortgages on or before their scheduled maturity dates, repeats the concept from ¶ 55 that in the event of such payment no principal or interest will be payable, but then adds the proviso that no event of default shall have occurred and be continuing prior to such payment in full.  Paragraph 55 of the "fifth" mortgage, then, is the only provision in the mortgage and related mortgage note that addresses the release of the mortgage -- appropriately so, given that "a promissory note and a mortgage given to secure it are separate instruments and are executed for different purposes." *Ankerman v. Mancuso*, 271 Conn. 772, 777, 860 A.2d 244, 247 (2004).  A promissory note is a contract for the payment of a debt; a mortgage, on the other hand, is "a conveyance of title to property that is given as security for the payment of a debt . . . ." Id., *citing* Black's Law Dictionary (7th Ed. 1999).  A mortgage can be released without the release of the debt it secures. *See Veillette v. Veillette*, No. FA890090247S, 2006 Conn. Super. LEXIS 669, at *8-9 (Super. Ct. Mar. 1, 2006) (disagreeing with defendant's argument "that a release of the mortgage releases the underlying debt").

Under New York law "where there is an inconsistency between a specific provision and a general provision of a contract, the specific provision controls."[7]  *Morales Elec. Contr., Inc. v. Siemens Bldg. Techs., Inc*., No. 09-CV-2743 (ADS)(ETB), 2012 U.S. Dist. LEXIS 43258, at *35 (E.D.N.Y. Mar. 28, 2012), *quoting Aguirre v. City of N.Y.*, 214 A.D.2d 692, 693, 625 N.Y.S.2d 597, 598 (App. Div. 1995).  Moreover, "it is a fundamental rule of contract construction that specific terms and exact terms are given greater weight than general language." *Aramony v. United Way of Am*., 254 F.3d 403, 413 (2d Cir. 2001), *citing* Restatement (Second) of Contracts § 203(c) (1981).  "Even where there is no 'true conflict' between two provisions, specific words will limit the meaning of the general words if it appears from the whole agreement that the parties' purpose

---

[7] Here, of course, the "fifth" mortgage and related note are separate agreements, but they refer to each other and are closely integrated.  The note could conceivably modify the mortgage if the parties so provided, and vice versa.

was directed solely toward the matter to which the specific words or clause relate." Id., 254 F.3d at 414, *citing* 11 Richard A. Lord, Williston on Contracts § 32:10, at 449 (4th ed. 1999).

Applying these principles, ¶ 55 of the "fifth" mortgage requires that, upon the payment of the "second," "third" and "fourth" mortgages before their scheduled maturity dates, the "fifth" mortgage be released. There is no contrary provision, let alone a more specific provision, elsewhere in the parties' agreements, including in the "fifth" mortgage note. On the other hand, the more specific provision, or proviso in ¶ 8 of the "fifth" mortgage note requires that, notwithstanding ¶ 55's phrase "without principal or interest," principal and interest shall remain payable under the note if the senior mortgages are prepaid after the occurrence of an event of default under the note. Accordingly, the Objection is granted to the extent that Peckham shall not have a secured claim under the "fifth" mortgage, which is deemed released under ¶ 55 of that agreement. However, Peckham shall have an allowed unsecured claim for principal and prepetition interest as provided under ¶ 8 of the "fifth" mortgage note, that note having been in default before the payment of the "second," "third" and "fourth" mortgages.[8]

II.    The Attorney's Fees Dispute

Peckham originally asserted a secured claim for $130,000[9] of its postpetition attorney's fees under Claim No. 27's reservation of the right to assert a claim for accruing, postpetition attorney's fees. Peckham's Response, at ¶ 12. The invoices for those fees, with time records, are attached as Exhibit D to Peckham's Response. After the August 31, 2016 hearing on the Objection, Peckham reduced that claim to $65,000. Peckham's Proposed Findings, at 3. It did not, however, identify the portions of the invoices, and corresponding time records, for which it was still seeking

---

[8] Because this portion of Peckham's claim is unsecured, pursuant to 11 U.S.C. § 502(b)(2) Claim No. 27 cannot include unmatured (i.e. postpetition) interest under the "fifth" mortgage note. This portion of Claim No. 27 will instead be governed by the provisions of the Debtor's chapter 11 plan pertaining to allowed unsecured claims.
[9] The actual amount is $133,997.75, which Peckham rounded down.

to be paid, in essence leaving it up to the Court to find which entries warrant allowance. The Debtor, on the other hand, objects to allowance of all but $13,000 of Peckham's claimed attorney's fees. Debtor's Proposed Findings at 18.

Peckham's right to an allowed secured claim for its attorney's fees is governed by both a specific provision of the Bankruptcy Code and the applicable terms of the loan documents supporting Claim No. 27. 11 U.S.C. § 506(b) states in relevant part, "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim . . . any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose." *See also United States v. Ron Pair Enters.*, 489 U.S. 235, 240, 109 S. Ct. 1026, 1029 (1989); *In re Wonder Corp. of Am.*, 72 B.R. 580, 588-89 (Bankr. D. Conn. 1987). Section 506(b) therefore requires that, to be allowed as part of a secured claim, the claimant's fees must be reasonable (a term that, as discussed below, has acquired a significant bankruptcy gloss), the fees must be provided in the parties' agreement under which the claim arose and lawful under applicable non-bankruptcy law, and the value of the collateral to be applied to the fees must exceed the amount of the claimed principal and prepetition interest.[10]

---

[10] With respect to the last requirement, Peckham's claim under the "fifth" mortgage note has been found to be unsecured. Thus, Peckham does not have a secured claim for fees relating to the "fifth" mortgage note. It could have an unsecured claim for such fees if they were provided for under the "fifth" mortgage note and if such fees were not barred by principles of bankruptcy law that might provide an independent basis for disallowing such a claim other than the mere fact that attorney's fees are specifically addressed only in 11 U.S.C. § 506(b). *Ogle v. Fid. & Deposit Co.*, 586 F.3d 143, 146 (2d Cir. 2009), *cert. denied*, 559 U.S. 1092 (2010). On the other hand, Peckham has not identified any fees attributable to the "fifth" mortgage note, and, as discussed below, even if it had done so it has not established a right to such fees under the note or, in the context of this case, that it is reasonable for the Debtor's estate to pay them. Accordingly, the Court disallows any claim to attorney's fees that might be attributable to work performed in connection with the "fifth" mortgage note. At a minimum, then, Peckham's claim for $65,000 of attorney's fees should be reduced by the ratio of the amount of its claim under the "fifth" mortgage note to the amount of its claims under the other mortgage notes.

The claimant has the burden to establish that its fees are allowable under section 506(b), including that they are reasonable in the context of the case and the claimant's position therein. *In re Dig. Prods. Corp.*, 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997) (stating that "[t]he fees must be cost justified by the economics of the situation and necessary to preserve the creditor's interest in light of the legal issues involved"); *In re Country Squire Assocs. of Carle Place, L.P.*, Case No. 94-14377, Chapter 11, 1998 Bankr. LEXIS 1909, at *41-42 (Bankr. N.D.N.Y. Sep. 30, 1998); *see also T-Bone Rest. LLC v. Gen. Elec. Capital Corp. (In re Glazier Grp., Inc.)*, Case Nos. 10-16099, 12-1878 (ALG), 2013 Bankr. LEXIS 1795, at *7-9 (Bankr. S.D.N.Y. May 2, 2013), *citing*, among other cases, *In re Amherst Orthopedic Assocs., P.C.*, 355 B.R. 420 (Bankr. W.D.N.Y. 2006); and *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162 (Bankr. S.D.N.Y. 1985).

To satisfy this burden, the claimant's time entries for services rendered must be specific enough for the court to "make an educated decision as to what the fees actually encompass." *In re Reorganized Lake Diamond Assocs., LLC*, 367 B.R. 858, 869 (Bankr. M.D. Fla. 2007); *In re Country Squire Assocs. of Carle Place, L.P.*, 1998 Bankr. LEXIS 1909, at *42; *In re Danise*, 112 B.R. 492, 495 (Bankr. D. Conn. 1990). One therefore could deny Peckham's attorney's fee claim on this basis alone; while its time entries are specific, it has not identified which of those entries are subsumed within its current $65,000 request, comprising half of its original claim for which the entries were submitted. The Court should not be asked to, in effect, serve as Peckham's advocate to find the entries that meet section 506(b)'s requirements. *In re Country Squire Assocs. of Carle Place, L.P.*, 1998 Bankr. LEXIS 1909, at *42-43 (denying section 506(b) request where claimant submitted its entire bill, including time for work clearly not covered by that section, and asked to Court to sort through it).

There are more reasons worth specifying than that, however, for granting this portion of the Objection.

Within section 506(b)'s construct, bankruptcy courts have broad discretion to determine the allowance of attorney's fees. *In re Mills*, 77 B.R. 413, 419 (Bankr. S.D.N.Y. 1987), including, as discussed above, the power to review the reasonableness of such fees in the context of the case and the claimant's position in it. *Id.*; *see also In re Wonder Corp. of Am.*, 72 B.R. at 588-89. A court has discretion to disallow fees and costs under section 506(b) of the Bankruptcy Code if it determines that "services were not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy." *In re Danise*, 112 B.R. at 495, *citing In re Wonder Corp. of Am.*, 72 B.R. at 591; *see also In re Glazier Grp., Inc.*, 2013 Bankr. LEXIS 1795, at *9-10:

> [T]he reasonableness of counsel's activities in representing a secured creditor may depend on the extent to which the creditor's secured position is jeopardized. Where a creditor is oversecured, the size of a creditor's equity cushion is an underlying factor in the reasonableness determination. When there is only minimal risk, circumstances will generally require that counsel respond only to issues of material concern.

(Internal citations and quotations omitted.)[11]

Moreover, "[a] secured creditor is not entitled to compensation for its attorneys' fees for every action it takes by claiming that its rights have been affected." *In re Dig. Prods. Corp.*, 215 B.R. at 482 (Bankr. S.D. Fla. 1997), *citing In re Huhn*, 145 B.R. 872, 876 (W.D. Mich. 1992). Time billed for services not related to protecting the claimant's secured position is not allowed. *In re Country Squire Assocs. of Carle Place, L.P.*, 1998 Bankr. LEXIS 1909, at *42. "[T]he services employed [have] to be necessary to protect [creditor's interest] in the debtor's property." *In re*

---

[11] "In determining reasonableness and necessity, the court applies its own knowledge, experience and expertise. . . ." *In re Evans*, 2013 Bankr. LEXIS 3453, at *10 (Bankr. D. Utah, Aug. 23, 2013).

14

*Salisbury*, 58 B.R. 635, 640 (Bankr. D. Conn. 1985).   A secured creditor can recover only attorneys' fees which are incurred to achieve "the objective of payment," *In re Cont'l Vending Mach. Corp.*, 543 F.2d 986, 994 (2d Cir. 1976), or "reasonably necessary to enforce [a] debtor's obligations to collect the amount remaining due pursuant to those obligations." *In re Glazier Grp., Inc.*, 2013 Bankr. LEXIS 1795, at *9-10.

Thus, where it is clear that the claimant is requesting fees that a typical secured creditor in its position would not have incurred to protect or recover on its secured claim -- for example, to acquire the collateral -- such fees are not allowable under section 506(b).  *See In re Mills*, 77 B.R. at 419 (denying section 506(b) claim for attorneys' fees related to the sale and closing of the debtor's property because the court did not consider the secured creditor's actions "serv[ed] to protect or defend the rights or [upheld] the lien of the [secured creditor]").  *See also In re Reorganized Lake Diamond Assocs., LLC*, 367 B.R. at 869-72, in which the court, citing *Mills*, denied a claim for the fees and costs associated with the attempt to acquire the debtor's property in an auction sale by a secured creditor, who, as here, had bought its claim postpetition for that purpose, because such fees were not "collection costs, and they were not those which a similarly situated creditor might have taken."

A similar gloss applies to whether a secured creditor can recover attorneys' fees for pursuing litigation against a guarantor.  If it is clear that the creditor will receive full recovery on its claim, the cost of litigation against a guarantor should not be allowed.  *In re Mkt. Ctr. E. Retail Prop., Inc*., 433 B.R. 335, 373-74 (Bankr. D.N.M. 2010).

Section 506(b) of the Bankruptcy Code's reasonableness requirement, therefore, transcends whether the attorney reasonably billed his or her client for the services rendered;[12] it

---

[12] Which, the Court has already observed, is in all likelihood the case here.  Aug. 31 Tr. at 53.

ensures also that it also be reasonable for the debtor's estate to pay for such services. If a typical secured creditor in the claimant's position would not have incurred such services, they should not be charged to the estate.

Clearly, Claim No. 27, with the exception of the unsecured portion based on the "fifth" mortgage, is oversecured, satisfying one of the prongs of section 506(b). The amount by which Claim No. 27 was oversecured also undercuts Peckham's attorney's fee claim, however. Under the Sale Procedures Order, Peckham had the right to credit bid in the amount of $5,990,642.13, and the purchase price for the collateral was $12,750,000 -- more than a 100 percent equity cushion. Under such circumstances, one seriously questions why Peckham's counsel would need to be so active in the case; Peckham was largely assured of a full recovery and the initial work in the case pertaining to the cash collateral order and filing Claim No. 27 was performed by Signature's counsel, whose claim for $75,000 of attorney's fees the Objection does not contest. And, indeed, when one examines Peckham's counsel's time records, it soon becomes clear that almost all of the entries relate not to obtaining a full recovery on the claim, or work that counsel would normally undertake to ensure that result, but, rather, (a) acquiring the claim from Signature, (b) pursuing a third-party guaranty by the Debtor's principal in state court, and (c) primarily, implementing Peckham's acquisition strategy, which, as discussed above, was Peckham's main, if not exclusive, focus in this case. (In fact, the first of the legal bills attached as Exhibit D to Peckham's Response is labeled "Acquisition of Canal Asphalt.")

Clearly, one of a secured creditor's remedies under the Bankruptcy Code is to acquire its collateral, which, as here, may include substantially all of the debtor's assets. This can be accomplished through a chapter 11 plan or a sale process, using the credit bid mechanism under 11 U.S.C. § 363(k). At times, therefore, legal fees incurred in obtaining collateral will be

16

reasonable for purposes of section 506(b) of the Bankruptcy Code.  For example, the debtor may have sought the secured creditor's cooperation in such an end game; or, alternatively, a debtor's intransigence may force a secured creditor to incur the expense of pursuing such a remedy.  Here, however, Peckham bought Claim No. 27 to pursue an acquisition strategy.  It was a volunteer in this case, and, for its part, the Debtor had to manage the sale process for the benefit of its estate and creditors to ensure that Peckham did not use its newly acquired claim to acquire the debtor for too little value.  Even if Peckham did not act in bad faith in pursuing its goal (and the Court found that Peckham in fact was a good faith purchaser under 11 U.S.C. § 363(m)), it is not reasonable for the Debtor's estate to pay its acquirer's legal fees in implementing such a result.  Thus, Peckham's attorney's fees for buying claims against the Debtor or otherwise pursuing and implementing its acquisition strategy should not be allowed under section 506(b) of the Bankruptcy Code.

Peckham's acquisition strategy, coupled with its materially oversecured position in this case also requires that its attorney's fees for pursuing the guaranty claim against the Debtor's principal also be disallowed.  It was clear early in Peckham's involvement in this case that such actions were unnecessary; moreover, it is fair to assume that such claims were being pursued to obtain potential negotiating leverage in connection with Peckham's acquisition strategy.  Thus, Peckham's claims for such fees also should not be allowed.

Alternatively, although based on the same factual context, almost all of Peckham's presently claimed attorney's fees are not covered by the applicable provisions of the "second" and "third" mortgage documents, which is the third requirement of Bankruptcy Code section 506(b) as well as a condition to the allowance of such fees as part of Peckham's unsecured claims.[13]

---

[13] See note 10, infra.

Paragraph 5(d) of the "second," "third" (and "fifth") mortgage notes states, "In the event that this Note is placed in the hands of an attorney for collection by reason of any default hereunder, the Borrower agrees to pay reasonable attorney's fees so incurred."  Exhibits A, B and C to Claim No. 27.[14]  Paragraph 11 of the "second," "third" (and "fifth") mortgage provides, in relevant part,

> If any action or proceeding be commenced (including, without limitation, an action to foreclose this Mortgage or to collect the Indebtedness secured hereby) in which the Mortgagee becomes a party or participates, by reason of being the holder of this Mortgage or the Indebtedness secured hereby, all sums paid or incurred by the Mortgagee for the expense of so becoming a party or participating (including reasonable counsel fees) shall, on notice and demand, be paid by the Mortgageor. . . .

Here, as discussed above, Peckham incurred the vast majority of its claimed fees not "for collection" on the debt it acquired, but, rather, to obtain substantially all the Debtor's assets for the lowest possible price.  As noted, there was nothing nefarious in this strategy; Peckham played by the rules, with some prodding from the Debtor and the Court.  Ultimately there was a fair multi-party auction that all parties supported.  However, one cannot say that, when the Debtor and Signature entered into the loan documents, they intended, under the plain language of ¶ 5(d) of the notes and ¶ 11 of the mortgages for those provisions to cover such an acquisition strategy.  Nor do those provisions cover actions to collect on third-party guaranties, as the operative paragraphs refer only to actions to collect on the notes or by reason of being the holder of the mortgages or the debt secured thereby.

Therefore, for each of the foregoing independent reasons, that portion of the Objection seeking to reduce Peckham's claim for attorneys' fees to $13,000 is granted.

---

[14] Paragraph 5(d) continues, "The Borrower promises to pay all expenses of any nature as soon as incurred, whether in or out of court and whether incurred before or after this Note shall become due at its maturity date or otherwise and costs which the [Lender] may deem necessary or proper in connection with the satisfaction of the indebtedness or the administration, supervision, preservation, protection (including, but not limited to, maintenance of adequate insurance) of or the realization upon the collateral."  This second sentence, which does not mention attorney's fees, does not broaden the right to attorney's fees specifically provided for in the preceding sentence, which would be superfluous if the second sentence instead meant to include attorney's fees among the costs covered.

18

**Conclusion**

For the foregoing reasons, the Court holds that Peckham's claim under the "fifth" mortgage note is wholly unsecured and governed by the terms of the Debtor's confirmed chapter 11 plan that pertain to unsecured claims. The "fifth" mortgage is deemed released by its terms.  The portion of Claim No. 27 asserting a right to postpetition interest in respect of the "fifth" mortgage note is disallowed, under 11 U.S.C. § 502(b)(2), as is any claim of Peckham for its attorney's fees incurred in connection with such note.  In addition, Peckham's remaining claim for its attorney's fees is reduced to $13,000, which amount is allowed as a secured claim under 11 U.S.C. § 506(b).

The Debtor's counsel should submit a proposed order consistent with the foregoing.

Dated:    White Plains, New York
          May 10, 2017

                                    /s/ Robert D. Drain
                                    HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE